# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-1402

BOUYA NGAZALA IKAMA-OBAMBI,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A96 167 258

ARGUED NOVEMBER 9, 2006—DECIDED DECEMBER 11, 2006

Before MANION, ROVNER, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge*. Bouya Ngazala Ikama-Obambi, a citizen of the Republic of Congo and the daughter of that country's former Secretary of Health (and a director of the World Health Organization for Africa as well) applied for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). The IJ denied her asylum application as untimely and denied her withholding application and request for relief under the CAT because he found that she did not adequately corroborate her testimony. The BIA adopted and affirmed the IJ's decision. Ikama-Obambi now petitions for review of this order, and we grant her petition.

In January 2003, after overstaying her visitor's visa, Ikama-Obambi applied for asylum, withholding of removal, and relief under the CAT based on her claimed fear of persecution on account of her political opinion and membership in a particular social group in Congo. She was 28 years old at the time. In her application Ikama-Obambi explained that in 1992 her father, uncle, and one of her brothers joined the newly formed party, Rally for Democracy and Development (RDD). That party supported Jacques-Joachim Yhombi-Opango, a former president of Congo. Though her father was an "important member" in the party, Ikama-Obambi did not join the party herself. According to articles attached to her application, the political situation in Congo began to deteriorate when violence erupted in 1993.

In her application Ikama-Obambi explains that her family, fearing for their safety because of the increased violence, split up and fled. Her parents sent her and her older brother Stephen to France; Ikama-Obambi lived with her aunt while Stephen attended boarding school. Her other brother, Offounga, who was actively involved with the RDD, fled to another city within Congo, while her mother fled to Kinshasa, the capital of the neighboring Democratic Republic of Congo. Only Ikama-Obambi's father stayed in their home in Brazzaville.

Attached to Ikama-Obambi's application are articles recounting that conditions in Congo worsened in 1997, when militia factions began warring for control of the country. By October 1997, Denis Sassou-Nguesso's faction gained control, and he declared himself president of the country. However, the violence continued, and in December 1998 a guerilla group called the "Cobras," which backed Sassou-Nguesso, began arresting members of the opposition. Ikama-Obambi alleges in her application that Offounga then returned to Brazzaville and reunited with his father. In 1999 Ikama-Obambi lost all contact with her

parents. By then Stephen had obtained permanent residency in the United States through his marriage to a United States citizen, and he arranged for Ikama-Obambi to visit him so that they could discuss her future. Ikama-Obambi left France, where she had been living continuously since 1993, and entered the United States on January 31, 2000, on a visitor's visa.[1] This was not her first trip to the United States; she previously visited Stephen in August 1999.

In her asylum application Ikama-Obambi further states that, although she and Stephen also had lost contact with Offounga in 1999, he eventually contacted them and explained that the Cobras had arrested him and their father but he managed to escape without their father. Offounga did not know the fate of either parent and emphasized that it would be dangerous for Ikama-Obambi and Stephen to return to Congo because the government was looking for them on account of their father's involvement with the RDD. Prior to getting confirmation of her father's arrest from Offounga, Ikama-Obambi had been relying on rumors that he had been captured and executed by government forces after hiding with other RDD members. Offounga received asylum in France in 2001.

During her removal hearing, Ikama-Obambi testified consistently with her asylum application and added that her father was the "head" of the RDD and that he gave directions to others in the party. She testified through a French interpreter, though she represented by checking a box on her asylum application that she was fluent in

---

[1]   In the body of her asylum application, Ikama-Obambi states that she last entered in December 1999. Elsewhere, though, including in the narrative attached to her application, she has consistently given the date as January 31, 2000.

English. She also clarified that she no longer could return to France because her visa had expired. To support her claim, she submitted a French document verifying Offounga's receipt of asylum. She also gave the IJ updated information regarding Congo, including a State Department report from 2003, which describes the country's human rights record as "poor" and blames the government's security forces for "unlawful killings, summary executions, rapes, beatings, physical abuse of detainees and citizens, arbitrary arrest and detention, looting, and solicitation of bribes and theft." The report identifies the RDD as a major opposition party. Ikama-Obambi introduced other articles, including an April 2003 article from Amnesty International saying that Sassou-Nguesso's government, like its predecessors, has "sought to perpetuate [its] power and build political stability against a background of grave human rights abuses."

At the outset of the hearing the IJ noted the untimeliness of Ikama-Obambi's asylum application. Counsel filed a brief and argued before the IJ that the one-year deadline for filing asylum applications, *see* 8 U.S.C. § 1158(a)(2)(B), should be waived in Ikama-Obambi's case because of "extraordinary circumstances." He explained that her purported lack of English fluency, her difficulty obtaining legal counsel, and her lack of knowledge regarding asylum law prevented her from filing sooner.

The IJ rejected this argument, finding her stated reasons for filing after the one-year deadline to be "routine obstacles," not extraordinary circumstances. He then remarked that Ikama-Obambi provided no proof, other than her testimony, that her father was the head of the RDD or that Sassou-Nguesso's government had a hand in his disappearance. He noted that Ikama-Obambi could have provided corroborating evidence, such as a statement from Offounga, testimony from Stephen, or documentation regarding her father's leadership of the RDD.

The IJ acknowledged that if Ikama-Obambi's father "was disappeared and if her father was in prison and seriously mistreated by the current government . . . she would have at least a reasonable possibility of persecution." But the IJ questioned the credibility of Ikama-Obambi's contention that her father led the RDD, noting that "the real problem here is a lack of corroborative evidence to prove the essential facts in the case." The IJ denied Ikama-Obambi's application for withholding of removal and relief under the CAT for failure to meet her burden of proof but granted her request for voluntary departure.

Ikama-Obambi appealed, but the BIA adopted and affirmed the IJ's decision. The BIA noted that her father's leadership role in the RDD is the type of information that "should be subject to easy corroboration." The BIA reasoned that, because Ikama-Obambi's testimony "was not specific or detailed and because the requested corroboration was easy to obtain," the IJ reasonably demanded corroborating evidence.

In her petition for review, Ikama-Obambi renews her argument that the one-year filing deadline for her asylum application should be overlooked based on extraordinary circumstances. But she faces a jurisdictional hurdle. An asylum application must be filed within one year of the applicant's entry, unless she can demonstrate "changed circumstances" or "extraordinary circumstances" that might justify noncompliance with this deadline. 8 U.S.C. § 1158(a)(2)(B), (D). Only the Attorney General, however, may decide whether an asylum application is timely or whether any exception to the deadline applies, and we lack jurisdiction to review these determinations. *See* 8 U.S.C. § 1158(a)(3); *Zaidi v. Ashcroft*, 377 F.3d 678, 680-81 (7th Cir. 2004). Both the IJ and BIA found Ikama-Obambi's asylum application untimely and concluded that no exception to the deadlines was warranted. Accordingly, we lack jurisdiction to review her asylum claim.

Notwithstanding our lack of jurisdiction over her asylum application, we may review the denial of her withholding application. *See Kobugabe v. Gonzales*, 440 F.3d 900, 901 (7th Cir. 2006). Ikama-Obambi first argues that the BIA and IJ inappropriately demanded evidence corroborating her father's leadership role in the RDD because they purportedly misunderstood her to have testified that her father was the president of the RDD. This argument fails. Although Ikama-Obambi never testified that her father was the "president" of the RDD *per se*, she did describe him as the "head of the party." And it is her uncorroborated claim that her father was the "head" of the RDD that both the IJ and BIA take issue with. The IJ and BIA did not misapprehend the record, as Ikama-Obambi argues. In fact they, unlike Ikama-Obambi, properly understood and recounted the statement she made during her hearing.

Ikama-Obambi also presents a second, substantial argument. And this is a good one. She contends that the IJ inappropriately denied her application due to a lack of corroborating evidence without first making an explicit credibility finding or explaining whether it was reasonable to expect her to provide corroboration given the recent history of political upheaval in Congo. Review of this question is limited by § 101(e) of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (amending 8 U.S.C. § 1252(b)(4)), which provides that "no court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable.") *Id.* § 101(e). This provision applies in Ikama-Obambi's case. *See id.* § 101(h); *Orejuela v. Gonzales*, 423 F.3d 666, 671 (7th Cir. 2005); *Hor v. Gonzales*, 421 F.3d 497, 501-02 (7th Cir. 2005).

An applicant seeking withholding of removal "bears the burden of demonstrating that loss of life or freedom is more likely than not" if she returned to her home country, *Kobugabe,* 440 F.3d at 901, but an applicant's credible testimony can sustain this burden of proof without corroboration, 8 C.F.R. § 1208.16(b).[2] On the other hand, an IJ may find an applicant's testimony incredible if she "fails to present certain foundational evidence." *Balogun v. Ashcroft,* 374 F.3d 492, 502 (7th Cir. 2004). While these two concepts can become easily conflated, they are distinct. Essentially, an IJ may disbelieve an applicant because she fails to provide corroborating evidence, and subsequently deny her claim. *See id.*; *Zaidi,* 377 F.3d at 682 ("[W]hen the IJ does not believe the applicant or does not know what to believe, the applicant's failure to corroborate his testimony can be fatal."). But if an IJ believes the applicant's testimony, corroboration "is *not* required." *Zheng v. Gonzales,* 409 F.3d 804, 810 (7th Cir. 2005) (emphasis in original); *see also Dong v. Gonzales,* 421 F.3d 573, 579 (7th Cir. 2005); *Uwase v. Ashcroft,* 349 F.3d 1039, 1041 (7th Cir. 2003). To ensure that IJs have the freedom to require supporting evidence, yet do not inappropriately demand it, we require that, before denying a claim for lack of corroboration, an IJ must: (1) make an explicit credibility finding; (2) explain why it is reasonable to have expected additional corroboration; and (3) explain why

---

[2] Under the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(a)(3)(B)(ii), 119 Stat. 231, an IJ may require an otherwise credible applicant to provide corroborating evidence unless the applicant does not have the evidence and cannot reasonably obtain it. This provision, unlike § 101(e), which cabined our scope of review, affects only asylum applications filed after May 11, 2005, and therefore did not apply at Ikama-Obambi's hearing before the IJ. *See Dawoud v. Gonzales,* 424 F.3d 608, 613 (7th Cir. 2005).

the petitioner's reason for not producing that corroboration is inadequate. *Gontcharova v. Ashcroft*, 384 F.3d 873, 877 (7th Cir. 2004); *see Dong*, 421 F.3d at 579 (applying *Gontcharova* requirements to withholding of removal applications).

The second and third of these elements were met in this case. The IJ's explanation of how Ikama-Obambi reasonably could have obtained corroboration is plausible and deserves deference. The IJ identified evidence that would have been readily obtainable regardless of the political upheaval in Congo, such as a statement from Offounga, who now safely resides in France. After all, Ikama-Obambi's asylum hearing was conducted three years after she filed her application. And as for documenting her father's role in the RDD, the BIA explained that "[t]ypically, evidence of a persons's position as the head of a national political party is reasonably accessible." Ikama-Obambi has never explained how the political instability in Congo prevented her from obtaining this information, and without facts that could compel us to find otherwise, the IJ and BIA's determination that these document could reasonably be obtained deserves deference.

What this case comes down to, then, is whether the IJ made an explicit adverse credibility finding before denying Ikama-Obambi's application due to lack of corroborating evidence. Ikama-Obambi argues that the IJ failed to do so. To make such a credibility determination, an IJ must provide more than "a passing reference implying doubt." *Diallo v. Gonzales*, 439 F.3d 764, 766 (7th Cir. 2006) (citations and quotations omitted) (holding that an IJ failed to make explicit credibility finding when he described applicant's testimony as "general" and "meager," making his demand for corroborating evidence improper); *see also Nakibuka v. Gonzales*, 421 F.3d 473, 478-79 (7th Cir. 2005) (holding that an IJ failed to make explicit credibility finding when he remarked that applicant's

testimony was "vague and confusing" as well as "exaggerated"); *Soumahoro v. Gonzales*, 415 F.3d 732, 736 (7th Cir. 2005) (holding that an IJ failed to make explicit credibility finding when he made passing remark that he "disbelieved" applicant's testimony); *but see Hussain v. Gonzales*, 424 F.3d 622, 628-630 (7th Cir. 2005) (holding that an IJ made an explicit credibility when the IJ found testimony not credible based on several enumerated inconsistences).

Though the IJ may have implicitly found that Ikama-Obambi was not credible because she lacked certain substantiating evidence, an implicit finding is not enough to justify an IJ's demand for corroboration. *See Soumahoro,* 415 F.3d at 736 (holding that explicit credibility finding must be more than passing remark of disbelief and must be supported by "specific, cogent, reasons"). Here, the IJ did question Ikama-Obambi's statement that her father led the RDD, asking "is this contention credible?" But the IJ never answered this question, noting only that "[i]t is difficult for me to ascertain the truth of [her] statement." The IJ never pointed to inconsistencies in Ikama-Obambi's testimony, nor did he express doubt because her testimony lacked detail. At most, the IJ's remarks represent passing references of doubt and, as such, cannot adequately substitute for an explicit credibility finding. *See Nakibuka*, 421 F.3d at 479.

We have recently remarked that the "[r]eluctance to make clean determinations of credibility" is a "disturbing feature[ ]" in the cases we review. *See Iao v. Gonzales*, 400 F.3d 530, 533-34 (7th Cir. 2005). As we noted in *Iao*, when an IJ avoids a clean determination of credibility by instead saying that an asylum applicant "hasn't carried her burden of proof, the reviewing court is left in the dark as to whether the judge thinks the asylum seeker failed to carry her burden of proof because her testimony was not

credible, or for some other reason." *Id.* at 534. This is equally true in Ikama-Obambi's case. Although the IJ concluded that "there is just no evidence that she is at risk," the IJ failed to explain if he came to this determination because Ikama-Obambi was not credible, or for some other reason.

The BIA, for its part, also does not comment on Ikama-Obambi's credibility. Instead it adopts and affirms the IJ's decision, adding only that Ikama-Obambi's testimony "was not specific or detailed." It is possible that the BIA implicitly discredited Ikama-Obambi's testimony because of its general nature, but the BIA must do more than suggest that her testimony is general or meager to make an explicit credibility finding. *See Diallo*, 439 F.3d at 766. In any case, the BIA finds Ikama-Obambi's testimony too general without directing us to any places where her testimony lacked detail. *See Soumahoro*, 415 F.3d at 736; *Zheng*, 409 F.3d at 810 (rejecting BIA's conclusion that applicant's testimony "lacks sufficient detail" where applicant testified to "time, place, and pertinent details"). Though there is controversy over Ikama-Obambi's father's precise role in the RDD, she did testify in detail to her father's involvement with the RDD. Her testimony included the name of the party (RDD), the year her father became involved in the party (1992), his duties in the party (giving orders to other party members), and the politician his party supported (Yhombi-Opango). Because the BIA and IJ have failed to make an explicit credibility finding, or even indicate why her testimony fails to carry her burden of proof as allowed by 8 C.F.R. § 1208.16(b), their demand for corroborating evidence was improper.

Accordingly, we GRANT the petition for review and REMAND the matter for further proceedings. Costs are awarded to the petitioner.

No. 06-1402                                                            11

A true Copy:

　　　Teste:

　　　　　　　　　　　　　_____
　　　　　　　　　　　　　*Clerk of the United States Court of*
　　　　　　　　　　　　　*Appeals for the Seventh Circuit*