**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 16, 2008
Decided February, 3, 2009

**Before**

TERENCE T. EVANS, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 07-4047

| | |
|---|---|
| YASSER ABDELGHANI, <br> *Petitioner,* | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | No. A78-869-534 |
| ERIC H. HOLDER, JR., Attorney General of the United States, <br> *Respondent.* | |

**ORDER**

Yasser Abdelghani, a citizen of Jordan, applied for asylum, withholding of removal, and protection under the Convention Against Torture. He alleged that were he returned to Jordan he would be persecuted for informing on the leader of an illegal visa ring and for allowing his sister to marry a non-Muslim. The Immigration Judge denied his asylum application as untimely and denied his other claims on the merits. The Board of Immigration Appeals affirmed on the merits. Because substantial evidence supports the BIA's decision, we deny Abdelghani's petition for review.

Abdelghani asserts that his life in Jordan became untenable as a consequence of his sister's 1999 engagement to an American Christian. The news outraged his Muslim

relatives, who pressed him to intercede and prevent the wedding. When he did not, they shunned him and ceased referrals to his limousine business, and, at a family funeral, someone punched him. Abdelghani also testified without elaboration that several relatives threatened to kill him, though he admitted that there were no attempts on his life during the eight months between the engagement and his departure for the United States.

Abdelghani and his wife and children entered this country in 2000 using valid visas, which investigators subsequently determined had been wrongfully issued by the U.S. Embassy in Qatar. Then, in 2002, the *Milwaukee Journal Sentinel* reports, federal authorities discovered that two of the September 11th hijackers had lived with someone who also came to the U.S. on a visa illegally obtained from the embassy in Qatar. Consequentially, law enforcement agents detained Abdelghani, then living in Wisconsin, and sixty-nine others connected to the Qatari scheme. Abdelghani conceded removability, admitting that he had bought his family's visas for $30,000 from Samir Hamad, an influential Jordanian with connections at the embassy, and identified nine others whom he had referred to Hamad.

Abdelghani immediately submitted an application for asylum, withholding of removal, deferral of removal under CAT, and voluntary departure. But because Abdelghani had entered the U.S. two years previously, the IJ deemed his asylum application untimely and found that no changed circumstances justified its tardiness. *See* 8 U.S.C. § 1158(a)(2)(B), (a)(2)(D). Next, the IJ determined that withholding of removal was not warranted because Abdelghani had established neither past persecution nor a likelihood of future persecution and had not shown that he would experience harm at the government's hands; for the latter reason, the IJ denied CAT relief as well. Lastly, the IJ, disturbed that Abdelghani had helped his friends fraudulently obtain visas, denied voluntary departure.

Abdelghani appealed the IJ's asylum and withholding of removal rulings, and the BIA affirmed. Without deciding whether Abdelghani's asylum application was timely, the Board assumed that Abdelghani could show changed circumstances and proceeded to conclude that he could not prevail on the merits of his claims. The Board explained that Abdelghani's past experiences with his family in Jordan did not rise to the level of persecution and that he had not shown that the Jordanian government was unable or unwilling to help him. The BIA also found that Abdelghani's fear of future persecution in Jordan at the hands of Hamad was too speculative. Lastly, the Board determined that "former informants in criminal prosecutions" did not constitute a particular social group. *See* 8 U.S.C. § 1231(b)(3).

## Analysis

We review the BIA's denial of relief by asking whether the Board's ruling is supported by substantial evidence; we will reverse the decision only if the record compels a contrary finding. *Huang v. Mukasey*, 525 F.3d 559, 564 (7th Cir. 2008); *Toptchev v. I.N.S.*, 295 F.3d 714, 720 (7th Cir. 2002).

Abdelghani contends that we should vacate the denial of his asylum application and claim for withholding of removal. He does not dispute that his asylum application was untimely; rather, he asserts that its tardiness should be excused by "changed circumstances," namely, his fear that Hamad will take revenge on him for cooperating with U.S. authorities. 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208.4(a)(4)(i)(B).

Generally, this court does not have jurisdiction to review a determination that an asylum application was filed after the one-year deadline or that any exception to the deadline, such as changed circumstances, applies. *See* 8 U.S.C. § 1158(a)(3); *Ikama-Obambi v. Gonzales*, 470 F.3d 720, 724 (7th Cir. 2006); *Vasile v. Gonzales*, 417 F.3d 766, 768-69 (7th Cir. 2005) (holding that jurisdiction over questions of law does not extend to changed-circumstances determination). But in this case, although the IJ determined that Abdelghani's application was untimely and rejected his claim of changed circumstances—and although the government urged the BIA to affirm those findings—the BIA glossed over the IJ's timeliness ruling and proceeded directly to the merits. As the Board wrote, "even accepting that [Abdelghani] has satisfied the requirements of 8 C.F.R. § 1208.(a)(4)(B) (2007) (defining "changed circumstances"), the evidence presented does not establish his eligibility for relief." (A.R. 2.) The BIA did not clearly ratify the IJ's finding that there were no changed circumstances, and since the government has not contested our jurisdiction to review the asylum claim, we turn to the merits.

Abdelghani first claims that he fears persecution by Hamad for informing on him. However, a criminal informant's fear of retaliation by his former confederates does not qualify as persecution on account of any of the five protected grounds. *See Wang v. Gonzales*, 445 F.3d 993, 998-99 (7th Cir. 2006). Abdelghani also expresses fear of persecution at the hands of the Jordanian government because he cooperated with investigators, but has produced no evidence that the Jordanian government has persecuted him or intends to do so.

Abdelghani next claims that his family's displeasure at his sister's marriage to a non-Muslim constitutes religious persecution. We have never explicitly held that persecution targeting inter-marriage constitutes religious persecution, but assume that it does. *See Boyanivskyy v. Gonzales*, 450 F.3d 286 (7th Cir. 2006); *see also Maini v. INS*, 212 F.3d 1167, 1175

(9th Cir. 2000) ("Simply put, persecution aimed at stamping out an interfaith marriage is without question persecution on account of religion.").

Abdelghani's argument has two major flaws.  First, he fears mistreatment by his family, yet persecution requires government involvement.  *See Chakir v. Gonzales*, 466 F.3d 563, 570 (7th Cir. 2006); *Mitreva v. Gonzales*, 417 F.3d 761, 764 (7th Cir. 2005).  There is one narrow exception: private action can constitute persecution if the government so indulges it that the government itself could be said to sponsor the misdeeds.  *See Hor v. Gonzales*, 400 F.3d 482, 485 (7th Cir. 2005).  With this in mind, Abdelghani says that he fears an "honor killing" at the hands of his family and submits that the Jordanian government's tolerance of honor killings is tantamount to endorsement of them.  In support he points to the United States State Department's 2007 Country Report for Jordan, which confirms that honor killings are typically punished less severely than other murders.  U.S. Dep't of State, Country Report on Human Rights Practices: Jordan (March 2008), *available at* http://www.state.gov/g/drl/rls/hrrpt/2007/100598.htm.  However, Abdelghani has presented no evidence to suggest that he in particular faces an honor killing if returned to Jordan.  As the government notes, an earlier version of the Country Report defines an honor crime as a "violent assault with intent to kill *against a female* by a relative for her immodest behavior or alleged sexual misconduct."  U.S. Dep't of State, Country Report on Human Rights Practices: Jordan (February 2005) (emphasis added).  Nothing in the record compelled the BIA to find that the Jordanian government wanted Abdelghani harmed.

The second flaw is that Abdelghani has neither demonstrated past persecution nor established a likelihood of future persecution.  *See Ndonyi v. Mukasey*, 541 F.3d 702, 710 (7th Cir. 2008).  Although a single incident, if severe enough, can reflect past persecution, the physical abuse Abdelghani received (a shove and two punches to the chest) falls far short of that mark.  *See Irasoc v. Mukasey*, 522 F.3d 727, 730 (7th Cir. 2008); *Asani v. I.N.S.*, 154 F.3d 719, 723-25 (7th Cir. 1998) (holding that one day of beating by police, following two weeks of detention and leading to loss of teeth, qualified as past persecution).  And whereas extraordinarily menacing or immediate threats may rise to the level of persecution, Abdelghani's family's threats, which went unfulfilled for eight months, do not.  *See Bejko v. Gonzales*, 468 F.3d 482, 486 (7th Cir. 2006); *Hernandez-Baena v. Gonzales*, 417 F.3d 720, 723 (7th Cir. 2005); *see also Nakibuka v. Gonzales*, 421 F.3d 473, 477 (7th Cir. 2005) (observing that a death threat accompanied by a gun to the head was sufficiently immediate).

Absent past persecution, Abdelghani must present specific and detailed evidence that he will face persecution if returned to Jordan.  *See Ahmed v. Ashcroft*, 348 F.3d 611, 618 (7th Cir. 2003).  He has not done so; in fact, he has presented essentially no evidence addressing future persecution.  Ultimately, Abdelghani has failed to make a case of past persecution and has not presented evidence that the future will be worse.

Turning to Abdelghani's claim for withholding of removal, we note that because the standards for withholding of removal are stiffer than those for asylum, this claim must fail as well. *See Zeqiri v. Mukasey*, 529 F.3d 364, 370 (7th Cir. 2008). Lastly, as Abdelghani has not made any argument on appeal pertaining to relief under CAT, that claim is forfeited. *Brucaj v. Ashcroft*, 381 F.3d 602, 611, n.7 (7th Cir. 2004).

Accordingly, we DENY Abdelghani's petition for review.