NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued March 4, 2009
Decided March 10, 2008

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 08-2398

| | |
|---|---|
| JIANZHONG ZHANG, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A98 046 173 |
| | |
| ERIC H. HOLDER, JR., Attorney | |
| General of the United States, | |
| *Respondent*. | |

**ORDER**

Jianzhong Zhang, a native and citizen of China, entered the United States as a nonimmigrant visitor in 1998.  He overstayed his visa, and in 2005 the Department of Homeland Security charged him as a removable alien.  Zhang applied for relief from removal based on a claim of political persecution, but, after finding that Zhang had not testified credibly in removal proceedings, an Immigration Judge ordered him removed.  The Board of Immigration Appeals affirmed.  Because the IJ's credibility determination was supported by substantial evidence, we deny Zhang's petition for review.

In March 1998 Zhang entered the United States with a business visa. In July 2005 officials from Immigration Control and Enforcement verified that Zhang had overstayed that visa. ICE officials placed him in removal proceedings and charged him with being illegally present in the United States, *see* 8 U.S.C. § 1227(a)(1)(B), and failing to comply with the conditions of the non-immigrant status under which he was admitted, *see* 8 U.S.C. § 1227(a)(1)(C)(i). Zhang admitted the charges and filed an application for asylum, withholding of removal, and relief under the Convention Against Torture. *See* 8 U.S.C. §§ 1158(a)(1), 1231(b)(3).

In his asylum application, Zhang claimed that he feared returning to China because he believed he would be imprisoned for organizing a protest at a factory. Zhang explained that when he began working at the Shenyang Steel and Iron Plant in Shenyang, China, in 1981, the business was very profitable. But the plant, a state-run entity, fell victim to competition from private enterprises in the early 1990s, and Zhang asserted that he and other workers went without wages for an entire year. Zhang further explained that in January 1997 he was laid off, but was told that he would receive a severance pay, which he also did not receive.

Frustrated with the situation, Zhang claimed that he and four former coworkers organized over 2,500 unemployed workers to protest in front of the city government building in March 1997 to protest their unemployment and absence of severance pay. In his application, Zhang asserted that the police cracked down on the protesters, stating that: "the police beat every worker they could find with their batons," including him, and arrested "everyone they could get a hold of." Zhang continued that he was arrested and held for "over 10 days," repeatedly slapped, kicked, knocked to the ground, and beaten with a baton until he "could not move." He did not detail any injuries he may have received from these beatings. Zhang's wife borrowed money to bail him out of jail. Fearing that the police would discover that he was one of the organizers of the demonstration, Zhang fled to United States. After he arrived, he learned from his wife (who was still in China) that the police had discovered that he was one of the organizers and filed criminal charges against him.

In October 2005 Zhang told the IJ that he intended to procure documents to support his asylum claim at the upcoming hearing. The IJ gave Zhang until May 2006 to do so. But in May, Zhang submitted only a copy of his birth certificate and told the IJ that he had no intention of submitting any other documents.

In April 2007, Zhang testified at his final removal hearing that after the protests he was detained for "more than 20 days" during which time the police knocked out one of his

teeth and broke two of his ribs. On cross-examination, the government asked Zhang why he did not report these injuries on his asylum application. In response, Zhang laughed and said that he must have forgotten. Interpreting the laughter as insincerity, the IJ warned Zhang that he could be permanently barred from immigration benefits for filing a frivolous asylum application.

Zhang also could not explain why he did not provide any available documents to support his claim of persecution. When his attorney asked Zhang why he did not ask his wife to submit a letter to corroborate his account, Zhang responded that he did not tell his wife that he was applying for asylum out of fear that the Chinese government would persecute his family. But when Zhang later admitted that he in fact had called his wife to ask for a birth certificate, he did not explain why he could not also ask her for published reports about the protest, which Zhang confirmed existed. Zhang also acknowledged that he could have asked his friends, fellow protestors, and coworkers to provide affidavits in support of his claim, but he had not done so.

Zhang likewise could not provide a consistent time-line of the events leading up to the protests. He initially testified that he was laid off in July 1997 (which would be four months *after* the layoff protests in March 1997 and six months later than the date Zhang gave in his asylum application), but then said that he misspoke and the layoff happened on May 1996. On cross-examination, Zhang repeated that he last worked in May 1996 and that he received severance payments until November 1996. Zhang later stated that although he stopped working in May 1996, he received severance from January 1997 though November 1997. But these dates contradicted his assertion in his asylum application that the protests, which occurred in March 1997, resulted from an absence of severance payments at that time. At the end of his redirect examination, Zhang twice reiterated that his payments stopped in November 1997, but then again contradicted himself by insisting that they stopped in January 1997.

The IJ found Zhang's asylum application untimely because it was not filed within one year of his arrival in the United States, *see* 8 C.F.R. § 1208.4(a)(2), and rejected as not credible Zhang's application for withholding of removal and CAT relief. The IJ was particularly troubled that Zhang presented no corroboration of his account and that he contradicted himself on the timing of his layoff and the termination of his severance payments, on the length of his detention, and on his injuries; the IJ also noted that Zhang's demeanor, including laughing during questioning, suggested dishonesty. Finding that Zhang submitted deliberately false statements, the IJ barred him from ever receiving any immigration benefits and ordered him removed. In a three-page opinion, the BIA agreed that Zhang had not testified credibly and affirmed the removal order but overturned the IJ's ruling barring Zhang forever from receiving immigration benefits.

We review the Board's decision denying withholding of removal for substantial evidence. *Aid v. Mukasey*, 535 F.3d 743, 746 (7th Cir. 2008). To establish eligibility for withholding of removal, Zhang must "demonstrate a clear probability of persecution" based on his political activity. *See Id.* at 746 (internal quotation marks omitted). Zhang argues that his testimony was credible and that he established his eligibility for withholding of removal. Specifically, he asserts he confused dates at the hearing because of his nervousness and the substantial time that had lapsed since the protests, and that, in any event, the inconsistencies were immaterial. Zhang also argues that he omitted his injuries from his asylum application because of a translator error, his hurry in preparing the application, and "a number of unfortunate," but unspecified, personal issues. Finally, Zhang argues that his demeanor and laughter were simply manifestations of his nervousness, confusion with the language, and fear.

Zhang's explanations for his various inconsistencies and omissions are possibly true, but we will defer to the Board's and IJ's credibility findings as long as they are supported by "specific, cogent reasons." *Sankoh v. Mukasey*, 539 F.3d 456, 470 (7th Cir. 2008) (internal quotation marks omitted). Because Zhang applied for asylum after May 11, 2005, his claim is governed by the REAL ID Act; accordingly, any inaccuracies, omissions of detail, or inconsistencies found by the fact-finder, regardless of whether they go "to the heart of [Zhang's] claim," can support an adverse credibility finding. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Mitondo v. Mukasey*, 523 F.3d 784, 787 (7th Cir. 2008).

The Board's credibility findings were supported by substantial evidence and adequate reasons. As the Board observed, the IJ gave Zhang many opportunities to clarify the approximate dates on which he was laid off and stopped receiving severance pay, but he was unable to tell a consistent story. The Board reasonably interpreted these repeated inconsistencies as evidence that Zhang was lying. *Mitondo*, 523 at 787. Furthermore, although even immaterial inconsistencies can support an adverse credibility finding, Zhang's inconsistencies were material. If, as Zhang ultimately testified, his severance payments lasted until November of 1997, then his stated reason for organizing the protest in March 1997—the absence of severance pay—makes little sense. Furthermore, the REAL ID act specifically allows a trier of fact to judge credibility on "the demeanor, candor, or responsiveness of the applicant," in this case, Zhang's laughter. 8 U.S.C. § 1158(b)(1)(B)(iii); *Mitondo*, 523 F.3d at 787. Although Zhang contends that his laughter and contradictions meant that he was simply "too jittery to produce an internally consistent story," *Mitondo*, 523 F.3d at 789, the Board could permissibly reject that explanation. *Id.* Finally, the Board reasonably interpreted Zhang's omission of any injuries in his asylum application as further evidence of his lack of credibility because lack of detail correlates highly with falsity. *Id.*

Zhang also argues that the Board erred when it based its credibility determination on his failure to provide corroborating evidence. Because the IJ determined that Zhang should provide corroborating evidence, Zhang was required to do so unless he could show that he could not reasonably obtain that evidence. *See* 8 U.S.C. § 1158(b)(1)(B)(ii), *Rapheal v. Mukasey*, 533 F.3d 521, 527 (7th Cir. 2008). Zhang contends that he gave a reasonable explanation for not acquiring corroboration: he feared for his family's safety if he alerted them about his immigration proceedings or his need for documentation. But Zhang contacted his wife for a birth certificate, so she knew he needed documents. Moreover, Zhang does not explain why he did not contact coworkers, fellow organizers, or friends for corroborating evidence, although the IJ gave him ample opportunity to do so. As the government points out, if Zhang has organized a protest of several thousand people, it is reasonable to expect that at least one of them would be available to provide a statement. Therefore, the Board did not err in basing its credibility determination, in part, on Zhang's failure to provide corroborating evidence. *See Ikama-Obambi v. Gonzales*, 470 F.3d 720, 725 (7th Cir. 2006).

Since substantial evidence and specific, cogent reasons support the Board's conclusion that Zheng did not testify credibly, we DENY the petition for review.