NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued May 22, 2012
Decided July 12, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 11-3010

| | |
|---|---|
| ALASSANE KONTE, | Petition for Review of an Order of the |
| *Petitioner*, | Board of Immigration Appeals. |
| | |
| *v.* | No. A098 520 242 |
| | |
| ERIC H. HOLDER, JR., Attorney General of the United States, | |
| *Respondent*. | |

# O R D E R

Alassane Konte, a native and citizen of Mauritania, petitions for review of an order of the Board of Immigration Appeals upholding an Immigration Judge's denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Because we lack jurisdiction to review the denial of the application for asylum, we dismiss the petition to the extent it seeks review of that denial; we remand the petition for the limited purpose of vacating the order of removal to Senegal; and we deny the petition in all other respects.

## I.

An alien must apply for asylum within one year of the date of his arrival in the United States unless he "demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect [his] eligibility for asylum[.]" *Abraham v. Holder*, 647 F.3d 626, 631 (7th Cir. 2011) (quoting 8 U.S.C. § 1158(a)(2)(B) and (D)). (There are other exceptions to the one-year deadline, but they are inapplicable here.) We generally lack jurisdiction to review the denial of an untimely application for asylum; however, "we retain authority to review constitutional claims and questions of law." *Id.* at 632; *see also* 8 U.S.C. § 1158(a)(3); 8 U.S.C. § 1252(a)(2)(D).

Konte argues that the Board committed an error of law in concluding that he did not prove by clear and convincing evidence that his asylum application was filed within one year of his arrival in the United States. He asserts that the Immigration Judge ("IJ") amended the Notice To Appear ("NTA") to allege an entry date of February 26, 2004, Konte admitted the NTA's allegations, and his admission was a judicial admission, thus withdrawing the fact from contention. Yet he has been unable to identify any regulation or binding, precedential decision offering authority for his position.

Neither *Qureshi v. Gonzales*, 442 F.3d 985 (7th Cir. 2006), nor *Selimi v. I.N.S.*, 312 F.3d 854 (7th Cir. 2002), provides such authority; they hold that an alien's concession of removability or excludability binds the alien. *See* 442 F.3d at 990; 312 F.3d at 860. At oral argument Konte cited two regulations, but neither supports his argument. *See* 8 C.F.R. § 1003.2 (regarding reopening or reconsideration before the Board); 8 C.F.R. § 1240.10(c) ("If the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent."). The IJ did not find that all issues of law and fact were uncontroverted; nor did he determine that the date of entry had been established by Konte's admission. Instead, the IJ found that Konte failed to produce clear and convincing evidence of his date of entry.

Konte cites *Hakopian v. Mukasey*, 551 F.3d 843 (9th Cir. 2008), which concluded that the alien's admission of the government's allegation in the NTA constituted a judicial admission of the alien's date of entry, removing the fact from dispute. *Id.* at 846. The court noted that allegations in a complaint are judicial admissions and that the NTA serves the same function as a civil complaint. *Id.* It also noted that the government did not move to amend the NTA or otherwise contest the date of entry. *Id.* at 847 ("Had the government ever withdrawn its allegation of or challenged [the alien's] claimed entry date, a different case might obtain.").

*Hakopian*, however, "did not establish a blanket rule that facts alleged in a Notice

to Appear, if admitted before the IJ, bind the court and the parties." *Cortez-Pineda v. Holder*, 610 F.3d 1118, 1122 (9th Cir. 2010) (holding that the government did not make a binding judicial admission about the alien's date of entry because the government "vigorously disputed" the entry date). The Ninth Circuit concluded that an admitted allegation in a NTA "might not bind the IJ" if the allegation is "subsequently contested." *Id.* Here, Konte, not the government, alleged the date of entry. (As Konte concedes, he alleged the date of entry, the IJ amended the NTA to reflect his allegation, and he then admitted the allegation as amended.) And in contrast with *Hakopian*, the date of entry in Konte's case *was* contested. *See, e.g.*, App. 137-38 (the government attorney stated on the record that she wanted the documents related to the allegation of the date of entry because "time and place of entry should be proven"); *id.* at 160-61 (Konte's attorney stated that Konte "entered the United States on a date that cannot be set" and asserted "changed circumstances" would make Konte eligible for asylum); *id.* at 206-07 (IJ Vinikoor said that Konte's lawyer raised the one year issue and IJ Brahoe never made a finding on that issue; Konte's lawyer responds, "Right."). Thus, it is clear that no one thought the date of entry had been conclusively established. Consequently, Konte's admission of the NTA as amended did not bind the IJ and the government.

Konte also challenges the Board's decision with respect to the "changed circumstances" exception. Although the Board erred in concluding that the exception was applicable only if the asylum application was filed after the changed circumstances occurred, *see* 8 U.S.C. § 1158(a)(2)(D) ("An application for asylum . . . may be considered . . . if the alien demonstrates . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum"), it went on to assume "that circumstances occurring after the filing of an asylum application may constitute changed circumstances for purposes of the 1-year filing deadline" and then decided that Konte failed to show a changed circumstance that materially affected his eligibility for asylum. Thus, the Board's error in interpreting the regulation did not have a bearing on its conclusion that Konte's asylum application should be denied as untimely. According to Konte, the Board also erred in analyzing the changed circumstances by focusing on whether his fear had changed. The Board's decision, however, does not bear this out. And the Board's conclusion that the 2008 *coup d'etat* in Mauritania did not materially affect Konte's eligibility for asylum is not a question of law that we may review. *See Abraham*, 647 F.3d at 632.

For these reasons, we lack jurisdiction to review the denial of Konte's untimely asylum application.

## II.

We do, however, have jurisdiction to review the denial of Konte's other claims.

We review the IJ's decision as supplemented by the Board's reasoning. *Jonaitiene v. Holder*, 660 F.3d 267, 270 (7th Cir. 2011). We deferentially review factual findings and uphold them if they are supported by substantial evidence. *Abraham*, 647 F.3d at 632. We will affirm the denial of withholding of removal and relief under CAT "if it is supported by reasonable, substantial and probative evidence on the record considered as a whole." *Jonaitiene*, 660 F.3d at 270 (quotation and citations omitted). We may reverse "only if the evidence compels a different result." *Abraham*, 647 F.3d at 632.

Konte argues that the IJ and Board committed legal error in requiring him to produce evidence corroborating his claim of past persecution because he believes the IJ found his testimony credible and corroborative evidence was unavailable. Under pre-REAL ID Act law, before denying a claim for lack of corroboration, an IJ should make an explicit credibility finding, explain why it is reasonable to expect additional corroboration, and explain why the alien's explanation for not producing corroboration was inadequate. *See Ikama-Obambi v. Gonzales*, 470 F.3d 720, 725 (7th Cir. 2006).

Relying on the REAL ID Act credibility standard, the IJ wrote that "I do not find that [Konte's] testimony was sufficiently persuasive to meet his burden of proof without corroborative evidence." The IJ found that Konte's testimony was consistent with his second application for asylum, but noted Konte admitted his first application contained exaggerations and misstatements about his mistreatment while allegedly incarcerated in Mauritania. He also noted that Konte entered the United States with a false passport. The IJ stated that the use of fraudulent documents to flee a country of persecution generally could not be considered in evaluating credibility; however, he noted that Konte had lived outside Mauritania for more than 10 years without persecution, which was an implicit conclusion that Konte did not use the false passport to flee persecution in Mauritania. Given the exaggerations in his first asylum application and Konte's use of a false passport, the IJ found it reasonable to expect Konte to offer documentary evidence to corroborate material facts central to his claim.

The Board, recognizing that pre-REAL ID Act credibility standard applied, decided the withholding of removal claim based on its agreement with the IJ's "finding that [Konte] did not establish that he experienced harm rising to the level of past persecution in Mauritania" and its conclusion that Konte "likewise did not establish that it is more likely than not that he will be persecuted should he return to Mauritania on account of a protected ground[.]" The Board proceeded to evaluate Konte's credibility, first referring to the "misstatements and exaggerations" about his past harm in his first application and then noting his use of a false passport to gain entry into the United States. According to the Board, the latter was "relevant to [Konte's] credibility because he used the passport not to escape the country of persecution, but to depart from another country where he had lived for 10 years." The Board concluded that the IJ

reasonably found Konte's testimony alone was insufficient to satisfy his burden of proof absent corroborative evidence, and affirmed the IJ's determination that Konte had not carried his burden to establish past persecution.

The IJ erred in finding that the REAL ID Act provided the governing standard regarding credibility in this case. The credibility standard of the Act is inapplicable because Konte applied for relief before May 11, 2005. Under pre-REAL ID Act law, "a credible . . . applicant . . . need not provide corroborating evidence in order to meet his burden of proof." *Dawoud v. Gonzales*, 424 F.3d 608, 612 (7th Cir. 2005). However, the Board caught this error and corrected it in determining that the outcome in this case would be the same under post- and pre-REAL ID Act law.

Konte asserts that the IJ found his testimony credible. Although the IJ's decision does not contain the words "adverse credibility finding" or explicitly state that Konte is not credible, language in the decision indicates that the IJ found Konte incredible. The IJ referred to the exaggerations and misstatements in his first asylum request and the use of a false passport. Thus, he identified two reasons for finding Konte incredible, either of which would be a sufficient basis to uphold an adverse credibility finding. *See Huang v. Gonzales*, 453 F.3d 942, 945 (7th Cir. 2006). This makes this case unlike *Ikama-Obambi*, in which we were unsure whether the IJ thought the alien failed to carry her burden because her testimony was incredible or for some other reason. 470 F.3d at 726.

To be sure, the better practice would have been for the IJ to have made an explicit credibility finding. *See id.* at 725-26. But we can discern that the IJ believed Konte failed to carry his burden of proof because his testimony was not credible. The IJ's decision makes more than mere "passing references of doubt" as to Konte's credibility and is an adequate substitute for an explicit credibility finding. *See id.* at 726. On this record, a remand to allow the IJ to make his implicit credibility finding explicit would be a formalistic exercise. And the Board upheld the IJ's implicit finding that Konte was not credible.

Konte takes issue with the IJ's and Board's characterization of "exaggerations and misstatements" in his initial asylum application, claiming that there was only one inconsistency in which he stated that he was raped by soldiers. Yet he downplays this rather significant inconsistency. The inconsistency is not about some unimportant matter; it went to the heart of Konte's claims of mistreatment and supports an adverse credibility finding. *See Long-Gang Lin v. Holder*, 630 F.3d 536, 544 (7th Cir. 2010) ("[A] single inconsistency going to the heart of an asylum claim may be grounds for an adverse credibility determination."). Further, the difference between an allegation of rape and an allegation of sexual subjugation or humiliation was not the only inconsistency. The first application also alleged that Konte was raped "by different

soldiers every single night." Thus, the multiple inconsistencies involved not only the severity of the mistreatment, but also the frequency.

Konte offered an explanation for the inconsistency about the severity of the mistreatment—the translator who assisted him in preparing his first application didn't speak English well and characterized the sexual subjugation as rape. It was Konte's burden to explain the inconsistency to the IJ's satisfaction, *Hassan v. Holder*, 571 F.3d 631, 637 (7th Cir. 2009); *Matter of D-R-*, 25 I. & N. Dec. 445, 455 (BIA 2011), and the IJ's reliance on the inconsistencies shows that he didn't credit Konte's explanation. We must defer to that decision unless "a reasonable factfinder would have been compelled to accept it." *Fedosseeva v. Gonzales*, 492 F.3d 840, 847 (7th Cir. 2007) (internal quotations omitted). That was not the situation here.

Second, Konte claims it was improper for the IJ and Board to rely on his use of a false passport as a basis for an adverse credibility finding. Konte conceded that the passport was fraudulent. We and the Board have recognized that there are circumstances in which an applicant's use of fraudulent documents for entry purposes has no bearing on the applicant's credibility. *See, e.g.*, *Dong v. Gonzales*, 421 F.3d 573, 578-79 (7th Cir. 2005); *In re O-D-*, 21 I. & N. Dec. 1079, 1083 (BIA 1998) ("[T]here may be reasons, fully consistent with the claim of asylum, that will cause a person to possess false documents, such as the creation and use of a false document to escape persecution by facilitating travel."). But Konte's circumstances were different: he did not use the false passport to escape persecution. Instead, he used it to depart from Senegal, a country where he had been living for ten years without imminent threat of persecution. In addition, the use of the false passport and subsequent return to the owner conveniently enabled Konte to conceal his actual date of entry. The resulting inability to document the date of entry also factored into the IJ's credibility assessment.

Furthermore, both the IJ and Board explained why it was reasonable to expect additional corroboration. The IJ cited Konte's use of a false passport and the exaggerations in his first application, and concluded that it was reasonable to expect corroboration of material facts. The Board also stated that given the circumstances, referring to Konte's use of a false passport and the material discrepancies in his previous statements, it was reasonable for the IJ to find his testimony insufficient without corroborative evidence.

Konte explained why he didn't have a statement from his father—he had died in 2006. He also offered an explanation why his mother couldn't provide a statement—she was mentally infirm. The IJ did not explain why Konte's explanations for not producing corroboration were inadequate. But the Board did, focusing on Konte's failure to produce a corroborative statement from his mother (presumably recognizing that

corroborative evidence from his father was unavailable). The Board acknowledged Konte's general claim that his mother was getting older and was not in good health, but concluded that "his minimal testimony does not establish that he could not have reasonably obtained at least a corroborative statement from her." Thus, contrary to Konte's claim, the Board did not ignore his testimony about his mother's mental health.

Under the REAL ID Act, "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4); *see Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 535-36 (7th Cir. 2005). This provision of the Act applies "to all cases in which the final administrative removal order is or was issued before, on, or after [May 11, 2005]," and thus applies to Konte's claim. *See Ikama-Obambi*, 470 F.3d at 724-25 & n.2. A review of the transcript supports the Board's conclusion that Konte's offered only "minimal testimony" to establish that he could not produce a corroborative statement from his mother. And Konte has identified nothing that would compel a finding that a corroborating statement from his mother was unavailable.

Because the IJ implicitly found Konte not credible and Konte had no corroborating documentation, the IJ found that he had not established past persecution or a well-founded fear of future persecution. We cannot say that this decision was unsupported by substantial evidence, which is fatal to Konte's claim for withholding of removal. Konte's inability to meet his burden with respect to withholding of removal necessarily means that he also fails to meet his burden with respect to his request for relief under CAT.

One final matter: Konte contends that the IJ erred in designating Senegal as the first country of removal. By failing to raise this argument with the Board and relegating it to a footnote in his opening brief, he has forfeited it. *See, e.g., Alvarado-Fonseca v. Holder*, 631 F.3d 385, 389 (7th Cir. 2011); *Milanouic v. Holder*, 591 F.3d 566, 571 (7th Cir. 2010).

## III.

The petition is DISMISSED to the extent it seeks review of the denial of asylum; it is DENIED in all other respects.