**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MATEO CORTEZ-PINEDA,
                              *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,

                              *Respondent.*

No. 08-72314

Agency No.
A094-086-105

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 7, 2010—Seattle, Washington

Filed July 2, 2010

Before: Kim McLane Wardlaw and Ronald M. Gould,
Circuit Judges, and James Ware, District Judge.*

Opinion by Judge Gould

---

*The Honorable James Ware, United States District Judge for the
Northern District of California, sitting by designation.

## COUNSEL

Erin T. Hall, Carol L. Edward (argued), Law Offices of Carol L. Edward, Seattle, Washington, for petitioner Mateo Cortez-Pineda.

Tony West, Richard M. Evans, Allen W. Hausman, Michael C. Heyse (argued), United States Department of Justice, Civil Division, Washington, D.C., for respondent Eric H. Holder Jr.

## OPINION

GOULD, Circuit Judge:

Mateo Cortez-Pineda petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal of an Immigration Judge's ("IJ") denial of his applications for special rule cancellation of removal, asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

## I

Cortez-Pineda, born in 1955, is a native and citizen of El Salvador. The government initiated removal proceedings against Cortez-Pineda in December 2005 with the filing of a Notice to Appear. It alleged that Cortez-Pineda entered the United States on or about June 1, 1990, and that he was removable as an alien present in the United States without having been admitted or paroled. Cortez-Pineda admitted the allegations and conceded removability, but sought special rule cancellation of removal under section 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), which extends eligibility for relief from removal to Salvadoran nationals who, among other requirements not at issue

here, "first entered the United States on or before September 19, 1990." Pub. L. No. 105-100, 111 Stat. 2193-2201 (1997), *amended by* Pub. L. No. 105-139, 111 Stat. 2644-45 (1997).

At a June 2006 hearing, Cortez-Pineda testified in support of his eligibility for special rule cancellation, stating that he entered the United States in June 1990. During cross-examination, the government asked whether Cortez-Pineda had admitted to immigration officers during a 1992 immigration fraud investigation[1] that, contrary to his claimed June 1990 entry, he "entered the United States in 1991." Cortez-Pineda answered, "No." The government also pressed an inconsistency between Cortez-Pineda's claimed June 1990 entry date and a statement in Cortez-Pineda's asylum application that he experienced problems in El Salvador "[t]owards the end of 1990." During the exchange, Cortez-Pineda's counsel stated in passing that the Notice to Appear stated that June 1990 was his entry date.

At the end of the June hearing, the government requested that an evidentiary hearing be set on the issue of Cortez-Pineda's date of entry if the government was able to secure evidence from the 1992 investigation. The IJ adopted that plan. On July 17, 2006, the government filed and served on Cortez-Pineda's counsel a memorandum in which it formally requested an evidentiary hearing concerning the "alleged date of entry into the United States." The IJ issued an order on July 19, 2006, notifying the parties that there would be a hearing concerning "the critical issue of whether the respondent entered this country in 1991 as opposed to the claimed entry from June, 1990." By later agreement of the parties, the IJ scheduled the evidentiary hearing for November 20, 2006.

At the November evidentiary hearing, the government

---

[1] The fraud investigation concerned allegedly fraudulent petitions for immigration benefits. Cortez-Pineda was a witness in, but not the subject of, the investigation.

offered testimony from the two immigration officers who had interviewed Cortez-Pineda during the 1992 investigation. The officers testified that during the interview, Cortez-Pineda had admitted to entering on January 4, 1991, and had retracted as false an earlier entry date indicated in his application for Temporary Protected Status. The government also introduced an affidavit prepared by the officers in which they had contemporaneously memorialized their interview with Cortez-Pineda. The IJ credited the testimony of the officers and determined that Cortez-Pineda was not eligible for special rule cancellation because he entered the United States after September 19, 1990.

Cortez-Pineda also sought relief from removal in the form of asylum, withholding of removal, and CAT protection, and the IJ denied these claims. The BIA, citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), adopted the IJ's decision and dismissed the appeal. Cortez-Pineda's timely petition for review followed.

## II

When, as here, the BIA adopts the IJ's decision citing *Matter of Burbano*, we review the IJ's decision as if it were the BIA's. *Abebe v. Gonzales*, 432 F.3d 1037, 1039-40 (9th Cir. 2005) (en banc). We review findings of fact for substantial evidence and questions of law de novo. *Id.*

## III

Cortez-Pineda argues that he met his burden of establishing eligibility for special rule cancellation under NACARA, *see* 8 C.F.R. § 240.64(a), because the government alleged in the Notice to Appear that Cortez-Pineda entered the United States on or about June 1, 1990, and that allegation was a judicial admission that bound the parties and the court when Cortez-Pineda admitted that fact before the IJ. Cortez-Pineda relies

on our decision in *Hakopian v. Mukasey*, 551 F.3d 843 (9th Cir. 2008).

**[1]** In *Hakopian*, we established that an uncontested date of entry alleged in the Notice to Appear is treated as a judicial admission for establishing the alien's date of entry. There, the Notice to Appear alleged an entry date that would have rendered Hakopian's asylum application timely. *Id.* at 845-46. The IJ nevertheless concluded that Hakopian's asylum claim was time-barred because Hakopian "ha[d] no documents to establish the date, time, and manner of her entry, only her own testimony." *Id.* at 846. We held that the IJ erred, reasoning as follows:

> The government alleged Hakopian's arrival date in its Notice to Appear, and Hakopian admitted the government's allegation at her hearing before the IJ. Allegations in a complaint are considered judicial admissions. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). In immigration proceedings, the Notice to Appear serves the same function as a civil complaint. Therefore, both the government and Hakopian agreed upon her date of entry, thus rendering this fact undisputed.

*Id*. We reaffirmed *Hakopian*'s holding after briefing in this case was complete. *See Cinapian v. Holder*, 567 F.3d 1067, 1073 (9th Cir. 2009).

**[2]** Contrary to Cortez-Pineda's contention, however, *Hakopian* did not establish a blanket rule that facts alleged in a Notice to Appear, if admitted before the IJ, bind the court and the parties. We made explicitly clear in *Hakopian* that an entry date alleged in a Notice to Appear might not bind the IJ if the Notice to Appear is amended or if, as here, the entry date is subsequently contested:

> [A]t no point—either before or during Hakopian's hearing—did the government move to amend its

Notice to Appear with respect to, or otherwise con-
test, Hakopian's stated date of entry. Therefore,
Hakopian could scarce be expected to produce addi-
tional documentary evidence of her arrival date, as
the IJ required in his oral decision. Had the govern-
ment ever withdrawn its allegation of or challenged
Hakopian's claimed entry date, a different case
might obtain.

551 F.3d. at 847; *see also Cinapian*, 567 F.3d at 1073.

**[3]** We hold that here, the government should not be held
to have made a binding judicial admission about Cortez-
Pineda's entry date because the government vigorously dis-
puted the entry date during the November 2006 evidentiary
hearing after notice was given to Cortez-Pineda that the issue
was in dispute, and Cortez-Pineda never expressly objected
on the grounds of judicial admission, instead stipulating to an
evidentiary hearing on the issue.[2] Cortez-Pineda was specifi-
cally instructed by the IJ in a July order and again during an
August master calendar hearing that the entry-date issue
would be the focus of the November evidentiary hearing, and
Cortez-Pineda was given adequate time—almost half a year
from the June hearing—to prepare for the November hearing.
Cortez-Pineda's counsel never suggested that the Notice to
Appear conclusively established Cortez-Pineda's entry date,
and his counsel's passing reference to the entry-date allega-
tion in the Notice to Appear cannot reasonably be construed

---

[2]*Matter of Velasquez*, 19 I. & N. Dec. 377 (BIA 1986), which con-
cerned an alien's attempt to disavow admissions of fact and a concession
to deportability earlier made for tactical reasons by the alien's counsel, *id.*
at 382, is inapposite. Cortez-Pineda does not contend that the govern-
ment's allegation of the entry date in the Notice to Appear was a tactical
decision. And, unlike in *Velasquez* where the government relied on the
petitioner's admission "[i]n order to prove the respondent's deportability,"
*id.* at 379, here, as explained below, Cortez-Pineda did not rely on the
alleged entry date in trying to prove his eligibility for special rule cancella-
tion.

as an objection to a contest of that issue. Instead, when the IJ instructed Cortez-Pineda's counsel at the June 2006 hearing that she would have until July 21, 2006, to respond to the government's request, if any, for an evidentiary hearing concerning the entry-date issue, Cortez-Pineda's counsel then acknowledged, "That would be okay."

Moreover, although "admissions in the pleadings are generally binding," *Am. Title Ins. Co.*, 861 F.2d at 226, Cortez-Pineda's counsel did not raise the judicial admission argument to the IJ. Had she done so, the government would have been alerted that to avoid controversy, it should amend the Notice to Appear and could have sought to do so. *See In re Bakersfield Westar Ambulance, Inc.*, 123 F.3d 1243, 1248 (9th Cir. 1997).[3] Nor did Cortez-Pineda rely in any way on the entry date alleged in the Notice to Appear in making his case that he was eligible for special rule cancellation; instead, Cortez-Pineda's counsel sought to establish Cortez-Pineda's timely entry through Cortez-Pineda's direct testimony and through documentary evidence. *Cf.* 32 C.J.S. *Evidence* § 626 (2008) ("When a party does not rely on the judicial admission of his adversary, but introduces evidence that has the effect of disproving his case, the party making the admission is not bound by it.").[4]

---

[3]We reject Cortez-Pineda's argument that the government could not have amended the Notice to Appear if it had been so informed. The applicable regulations provide that substituted charges or allegations may be lodged "at any time." 8 C.F.R. §§ 1003.30, 1240.10(e).

[4]Although Rule 15(b)(2) of the Federal Rules of Civil Procedure is inapplicable in immigration proceedings, our decision accords with Rule 15(b)(2), which expressly permits a trial by consent of the parties of an issue not raised in the pleadings. *See id.* ("When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. . . . [F]ailure to amend does not affect the result of the trial of that issue."); *see also Janis v. Comm'r of Internal Revenue*, 461 F.3d 1080, 1085 n.3 (9th Cir. 2006) (unpleaded issue was tried by implied consent where no objection was made when the issue was raised).

Cortez-Pineda next argues that the government's failure to amend the Notice to Appear deprived him of the opportunity to respond to the amended allegation before the merits hearing on the issue. *See* 8 C.F.R. §§ 1003.30, 1240.10(e) (providing that in the event that substituted charges or allegations are lodged, the alien "may be given a reasonable continuance to respond to the additional factual allegations and charges"). This argument is without merit. When the government contested the entry date during the June 2006 hearing, the hearing was continued, and Cortez-Pineda had until November to prepare a response on this issue, which we conclude was a reasonable amount of time in the circumstances of this case.

**[4]** Evaluating the evidence of Cortez-Pineda's entry date, the IJ's determination that the June 1990 entry date was not credible is supported by substantial evidence.[5] The testimony of the immigration officers—that Cortez admitted to entering the United States in January 1991—was consistent, detailed, and corroborated by a contemporaneously prepared affidavit. The IJ appropriately concluded that Cortez-Pineda was not eligible for special rule cancellation.[6] We hold that substantial evidence supports this conclusion of the IJ.

## IV

We also review for substantial evidence the factual findings underlying the IJ's determination that a petitioner has not established eligibility for asylum, withholding of removal, or

---

[5]We reject Cortez-Pineda's contention that the IJ should have considered the "possibly coercive nature and circumstances regarding Mr. Cortez-Pineda's August 1992 sworn statement which changed his date of entry date into the U.S. from 1990 to January 1991." Cortez-Pineda never stated that he was coerced into changing his entry date and instead stated that he did not recall retracting the June 1990 entry date. This is insufficient to rebut the substantial evidence supporting the IJ's conclusion.

[6]We recognize that the better procedure would have been for the government to amend the Notice to Appear, if only to avoid disputes like the present one, and we encourage the government to do so in future cases.

CAT relief. *Sinha v. Holder*, 564 F.3d 1015, 1019-20, 1025 (9th Cir. 2009).

To qualify for asylum, a petitioner must establish that he or she meets the statutory definition of a refugee, 8 U.S.C. § 1158(b), as someone "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his or her] country because of persecution or a well-founded fear of persecution on account of" a protected ground, 8 U.S.C. § 1101(a)(42)(A). The IJ made an explicit adverse credibility determination and denied Cortez-Pineda's asylum claim on that basis. We review an adverse credibility determination for substantial evidence. *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). Even if some of the factors relied upon by the IJ are unsupported, in the case of an asylum application filed before May 11, 2005, we must uphold an adverse credibility finding "[s]o long as one of the identified grounds is supported by substantial evidence and goes to the heart of [the petitioner's] claim of persecution." *Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir. 2004) (first alteration in original).[7]

[5] At least two of the grounds relied on by the IJ in making the adverse credibility determination go to the heart of Cortez-Pineda's claim and are supported by substantial evidence. First, the IJ determined that the inconsistency between Cortez-Pineda's claimed June 1990 entry date and the January 1991 entry date he admitted to during the fraud investigation undermined his credibility on his asylum claim. Second, the IJ determined that Cortez-Pineda's statement in the asylum application that he was seeking asylum because of threats he received toward the end of 1990 was inconsistent with his hearing testimony that he left El Salvador because of threats

---

[7]The REAL ID Act's elimination of the requirement that inconsistencies must go to the heart of the claim does not apply here because Cortez-Pineda filed his asylum application before May 11, 2005. *See Shrestha*, 590 F.3d at 1039-40.

he received in March 1990. These are not insignificant inconsistencies about the precise date on which an event occurred, *cf. Bandari v. INS*, 227 F.3d 1160, 1166 (9th Cir. 2000), but are material and call into question whether Cortez-Pineda actually experienced the problems that he said precipitated his decision to depart El Salvador. The IJ did not have to accept Cortez-Pineda's unpersuasive explanations for these inconsistencies—that he did not recall retracting his June 1990 entry date during the 1992 investigation, and that he "made a mistake in the dates" in the asylum application. *See Rivera v. Mukasey*, 508 F.3d 1271, 1275 (9th Cir. 2007). Further, the IJ's conclusion that the affidavits from Cortez-Pineda's family members—which described threats and injuries from unknown and unidentified persons—did not support his persecution claim, is supported by substantial evidence. We hold that the IJ's adverse credibility determination and denial of asylum relief are supported by substantial evidence. Because Cortez-Pineda did not satisfy the lower standard of proof for asylum, he necessarily did not satisfy the more stringent standard of proof for withholding of removal. *See Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003).[8]

[6] Finally, when, as here, the petitioner's CAT claims "are based on the same statements . . . that the [IJ] determined to be not credible," and the petitioner "points to no other evidence that he could claim the [IJ] should have considered," the CAT claim must be rejected. *Id.* at 1157.

**DENIED**.

---

[8]Because only one ground is necessary to support an adverse credibility determination, *see Li*, 378 F.3d at 964, we do not reach the additional grounds cited by the IJ. Similarly, we do not reach the IJ's alternative conclusion that Cortez-Pineda's testimony, even if credible, did not establish that he met the statutory definition of a refugee.