**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

APR 27 2018

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DAVICIN EMEKA NWADINOBI, AKA Devicin Nwadinaobi, | No. 15-73246 |
| Petitioner, | Agency No. A206-498-278 |
| v. | MEMORANDUM* |
| JEFFERSON B. SESSIONS III, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 16, 2018
San Francisco, California

Before: PAEZ and IKUTA, Circuit Judges, and ADELMAN,** District Judge.

Davicin Emeka Nwadinobi petitions for review of the Board of Immigration

Appeals (BIA) decision affirming the Immigration Judge's (IJ) adverse credibility

determination, upholding the IJ's denial of asylum and withholding of removal,

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

and rejecting Nwadinobi's claims that his due process rights were violated by faulty translation and by the IJ's reliance on evidence not in the record. We have jurisdiction under 8 U.S.C. § 1252.

**1.** We hold that the IJ's adverse credibility determination was not supported by substantial evidence. Where, as here, the BIA reviewed the IJ's credibility determination for clear error and "relied upon the IJ's opinion as a statement of reasons but did not merely provide a boilerplate opinion," we do not review "those parts of the IJ's adverse credibility finding that the BIA did not identify as most significant and did not otherwise mention." *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014) (internal quotation marks and citations omitted) (quoting *Tekle v. Mukasey*, 533 F.3d 1044, 1051 (9th Cir. 2008)).[1] On appeal, the government defends only three of the agency's reasons[2] for Nwadinobi's adverse credibility determination; we address each in turn.

---

[1] Contrary to the dissent's contention, we are limited to reviewing the reasons "explicitly identified" by the BIA because while the BIA "relied upon the IJ's opinion as a statement of reasons," it "did not merely provide a boilerplate opinion"; indeed, the BIA expressly rejected one of the grounds for the IJ's credibility finding. *See Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014) (internal quotation marks and citations omitted). Notably, even the government does not contend that the other reasons relied upon by the IJ (such as demeanor) are properly before us.

[2] In its briefing, the government conceded that the fourth ground relied upon by the BIA lacked support in the record. As such, any argument regarding that issue is waived. *See Miller v. City of Los Angeles*, 661 F.3d 1024, 1029 (9th Cir. 2011).

2

**a.** Nwadinobi explained the inconsistent birth dates on his Nigerian identity documents by stating that the Nigerian government was unconcerned with the day and the month of birth—only the year, his name, and his address—and that the government "sometimes" made "mistakes" as a result. The IJ rejected Nwadinobi's explanation and called it "not persuasive." The IJ did not explain why she thought his explanation was unpersuasive; instead, it appears that she simply thought it was implausible that the Nigerian government would be so lax in its treatment of identification documents. This is a quintessential example of impermissible "speculation and conjecture." *Kumar v. Gonzales*, 444 F.3d 1043, 1050 (9th Cir. 2006)

Although the IJ is allowed to "exercise common sense in rejecting a petitioner's testimony," *Jibril v. Gonzales*, 423 F.3d 1129, 1135 (9th Cir. 2005), she cannot dismiss a petitioner's plausible explanation out of hand or arrive at a conclusion contrary to facts in the record. *See Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014). Here, the record provides objective evidence that Nwadinobi's explanation for the discrepancy in his birth date across various forms of identification—evidence the IJ did not mention and was not at liberty to ignore— was plausible given Nigeria's lax recordkeeping and identity document practices. *See Lai*, 773 F.3d at 970; *see also Collins v. U.S. Citizenship & Immigration Servs.*, 820 F.3d 1096, 1097 (9th Cir. 2016). Set against this evidence, the IJ was

not free to rely on her unfounded assumptions about Nigeria's recordkeeping practices to find Nwadinobi's explanation not credible. Where, as here, an IJ's determination is "nothing more than conjecture unsupported by the evidence in the record . . . [w]e are compelled to reject it." *Kumar*, 444 F.3d at 1051.

**b.** In 2010, Nwadinobi moved to Lagos and stayed for several months with a friend who owned a clothing shop, during which time he helped this friend run his clothing business before moving out and opening his own clothing shop. In Nwadinobi's asylum application—written by a fellow detainee who did not speak Nwadinobi's native Igbo language—he listed this friend's name as Davis. During his testimony, Nwadinobi referred to this friend as Chigioke or Chucote. When the IJ asked him about the inconsistent names, Nwadinobi explained that Chigioke and Chucote are the friend's "local names" and that Nwadinobi refers to his friend by several names.

Because Nwadinobi plausibly explained that he referred to his friend by multiple names, the IJ was required to provide a "specific, cogent reason for rejecting the evidence, and this reason must bear a legitimate nexus to that rejection." *Kumar*, 444 F.3d at 1050 (internal quotation marks and alterations omitted). She did not. Her decision simply states without explanation that "respondent's explanation was not persuasive," the sort of summary rejection we have previously held to be inadequate. *See Lai*, 773 F.3d at 973. Nor can the IJ's

4

decision be saved by common sense reasoning. *See Jibril*, 423 F.3d at 1135. Common sense dictates that a person can have multiple names, including nicknames and middle names. Moreover, the IJ appeared to impermissibly speculate that Nigerian naming conventions would not allow for a person to have several names, including "local names." *See Kumar*, 444 F.3d at 1050. Importantly, the other details about his friend were the same across both Nwadinobi's declaration and testimony.[3] An IJ commits legal error where she fails to "consider and address all plausible and reasonable explanations for any inconsistencies that form the basis of an adverse credibility determination." *See Zhi*, 751 F.3d at 1092–93 (quoting *Chen v. INS*, 266 F.3d 1094, 1100 (9th Cir. 2001)) (internal quotation marks and alteration omitted).

**c.** The BIA also agreed with the IJ that Nwadinobi's "testimony that he had two sexual partners conflicted with [his] declaration that stated he had many boyfriends." The IJ did not find persuasive Nwadinobi's explanation, which distinguished between boyfriends— "male friends" that "he did not have sex

---

[3] Although the dissent describes the issue of Nwadinobi's friend's name as an "inconsistenc[y]" in "his narrative of escaping persecution," we view the inconsistency—to the extent that one exists—as merely a minor, trivial detail. As noted, all of the other details about his friend, as well as Nwadinobi's overall narrative of his time in Lagos, were consistent between his declaration and his testimony. Like the petitioner who struggled to remember whether he passed out on the second or third day of detention in *Ren v. Holder*, 648 F.3d 1079, 1086 (9th Cir. 2011), the name of Nwadinobi's friend did nothing to enhance Nwadinobi's claim of persecution, and the core details of his story remained untouched.

with"—and homosexual partners with whom he had intimate relations, a relationship that Nwadinobi described as a "lover."  Nwadinobi argues that his definition of "boyfriend" is consistent with his statements that he's only had sex with two men, and we agree.  The confusion regarding the difference between "boyfriends" and "lovers" seems largely rooted in faulty translation and in the fact that another person—a fellow detainee who did not speak Nwadinobi's native language—wrote his declaration.  "Even where there is no due process violation, faulty or unreliable translations can undermine the evidence on which an adverse credibility determination is based."  *He v. Ashcroft*, 328 F.3d 593, 598 (9th Cir. 2003).  There is substantial objective evidence that the unidentified translator at Nwadinobi's merits hearing offered faulty or unreliable translations.  Set against this backdrop, Nwadinobi's confusing definition and use of the word "boyfriend" at his hearing makes significantly more sense as a translation problem rather than a credibility issue.  In light of this record, we conclude that this ground for the adverse credibility finding was not supported by "reasonable, substantial, and probative evidence."  *See id.* at 603 (reversing adverse credibility determination where significant translation problems were evident from the record and the IJ was "impatient, hostile, and hectoring in his questions" and "careless and unjustified in his conclusions") (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted).

Because each ground relied upon by the agency fails—either because the record compels alternative conclusions or because the findings were based on legal error—we reverse the adverse credibility determination. *See Zhi*, 751 F.3d at 1092–95.

**2.** We deny Nwadinobi's petition for review as it pertains to his due process claims. "Deportation proceedings violate due process if the alien does not receive a 'full and fair' hearing and suffers prejudice as a result of the inadequate proceedings." *Perez-Lastor v. INS*, 208 F.3d 773, 777 (9th Cir. 2000). We review de novo claims of due process violations in removal hearings. *Id.*

**a.** Nwadinobi first contends that the IJ violated his due process rights by questioning Nwadinobi about testimony adduced during his brother's hearing held before the same IJ, such that the IJ violated Nwadinobi's right to a full and fair hearing. Even assuming that Nwadinobi's right to a full and fair hearing was violated by such questioning, we conclude that Nwadinobi cannot show prejudice because the BIA expressly disclaimed reliance on this line of questioning.

**b.** Nwadinobi also argues that his due process rights were violated by faulty translation. "Due process requires that an applicant be given competent translation services" if he or she does not speak English. *He*, 328 F.3d at 598. We agree with Nwadinobi that the translation during the hearing was inadequate and made it difficult for Nwadinobi to fully present his story. *See Perez-Lastor*, 208 F.3d at

7

779.  Our conclusion is bolstered by the fact that the areas where communication was lacking are areas where Nwadinobi had nothing to gain from lying, but rather could have more fully supported his asylum application.  *See id.* ("[Petitioner] gains nothing by avoiding the questions.  Thus, the most plausible conclusion is that he did not understand what was said to him.").

To prevail on his due process claim, however, Nwadinobi must also show prejudice.  "In the case of an incompetent translation claim, the standard [for prejudice] is whether a better translation would have made a difference in the outcome of the hearing."  *Id.* at 780 (quoting *Acewicz v. INS*, 984 F.2d 1056, 1063 (9th Cir. 1993)).  We conclude that a better translator could have made a difference as to two of the grounds for the adverse credibility determination: the alleged discrepancy between the number of "boyfriends" versus the number of "lovers," and the inconsistent birthdates on Nwadinobi's identity documents.  During testimony about the number of boyfriends versus lovers, for example, Nwadinobi's answers to the government attorney's questions were frequently non-responsive.  And during questioning on the discrepancy between his driver's license and ID card birthdates, Nwadinobi had to be repeatedly told which document the attorney was asking him to examine and appeared confused by the questioning.  But while discussing the discrepancy in the name of his friend, Nwadinobi's testimony was relatively clear and the record does not indicate any significant translation errors.

8

Nor has Nwadinobi provided evidence indicating that his testimony as to his friend's name would have been different with a better translator. We thus conclude that Nwadinobi has failed to show prejudice.

**GRANTED** in part, **DENIED** in part, and **REMANDED** for further proceedings consistent with this disposition.

Petitioner shall recover his costs on appeal.

*Nwadinobi v. Sessions*, No. 15-73246
Ikuta, J., dissenting

Thirteen years ago we bemoaned the fact that our circuit's approach to reviewing an immigration judge's adverse credibility determination constituted a "sly insubordination" that flouted Congress's rule that "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," as well as "the Supreme Court's admonition that '[t]o reverse the BIA finding we must find that the evidence not only *supports* that conclusion, but *compels* it.'" *Jibril v. Gonzales*, 423 F.3d 1129, 1138 (9th Cir. 2005) (second quoting 8 U.S.C. § 1252(b)(4)(B); then quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)). At that time, we thought "relief is on its way in the form of the Real ID Act of 2005," *id.* at 1138 n.1, which made clear that the IJ could base a credibility determination on a broad range of factors, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii).

Sadly, that hope has been baffled by our court's willingness, even after the Real ID Act, "to obscure th[e] clear standard" set forth by statute and Supreme Court precedent. *Jibril*, 423 F.3d at 1138. Today's disposition is yet another example of this trend. Although the majority agrees that the IJ correctly identified inconsistencies in Nwadinobi's asylum claim, it makes its own findings that

Nwadinobi's explanations are colorable, which leads the majority to the further conclusion that the IJ must have erred in rejecting them. But even if Nwadinobi's "explanation is conceivable" or provides "one feasible interpretation of [his] testimony" that resolves an inconsistency, *Jiang v. Holder*, 754 F.3d 733, 739 (9th Cir. 2014), the majority forgets that the IJ "did not have to *accept* [Nwadinobi's] unpersuasive explanations for these inconsistencies," *Cortez-Pineda v. Holder*, 610 F.3d 1118, 1124 (9th Cir. 2010) (emphasis added). If we cannot hold that "the evidence compels" such an interpretation, *Jiang*, 754 F.3d at 740, we must uphold the IJ's views.

The BIA pointed out a few examples of inconsistencies that supported the IJ's determination that Nwadinobi was not credible. These examples demonstrate how the majority strays from our deferential standard of review. First, the IJ noted that Nwadinobi had testified to one birth date, but that his two government-issued identification cards contained two other birth dates. The IJ found Nwadinobi's explanation that the Nigerian government makes "many mistakes and that he never tried to correct those documents" unpersuasive. The majority contends that the IJ erred in rejecting Nwadinobi's explanation, given evidence in the record regarding the status of Nigeria's recordkeeping for prisoners or pretrial detainees. But of course, evidence regarding lax or nonexistent recordkeeping has little bearing on

2

the question whether the Nigerian government regularly issues identification documents with erroneous and inconsistent birth dates.[1]  At the least, it was not pure "speculation and conjecture," *Kumar v. Gonzales*, 444 F.3d 1043, 1050 (9th Cir. 2006), for the IJ to conclude otherwise.  Because the record does not compel a different interpretation, we have no basis to overturn the IJ's determination on this point.  *See Garcia v. Holder*, 749 F.3d 785, 790–91 (9th Cir. 2014).

Second, the IJ noted that Nwadinobi "testified that in 2010 when he moved to Lagos, he lived with a friend, Chigioke; however, his declaration states that he lived with Davis."  A reasonable adjudicator could conclude that a witness's failure to recall the name of the friend he supposedly lived with for several months undercuts his credibility.  Nor would that adjudicator be compelled to credit the witness's explanation that he uses multiple names for his friend, where there is no evidence in the record supporting such a story.  The same is true here; there is no basis for rejecting the IJ's reasoning that Nwadinobi's explanation for his inconsistency "was not persuasive in that there was no explanation, that it was a name that he used."  *See Garcia*, 749 F.3d at 790–91 ("[The petitioner] suggests

---

[1] For that reason, the majority's citation to extra-record evidence from an unrelated case — decided after both the IJ and BIA decisions in this appeal — that Nigeria did not have a birth register between 1948 and 1952, is likewise irrelevant. *See* **Maj. at 3** (citing *Collins v. U.S. Citizenship & Immigration Servs.*, 820 F.3d 1096, 1097 (9th Cir. 2016)).

plausible alternatives to the IJ's conclusion. Yet she cannot show that the record compels a different interpretation, and that is fatal to her challenge to the adverse credibility determination."). The majority's conclusion to the contrary is apparently based on its views that the IJ has to provide a disquisition as to why Nwadinobi's error raises credibility issues; but no disquisition is required for such an obvious point.[2]

Finally, Nwadinobi's declaration stated that he had "many boyfriends in Lagos," and described an incident with his "boyfriend Chima" where they were caught in an intimate moment together. The IJ pointed out that this was inconsistent with Nwadinobi's testimony that he had only two sexual partners, one of whom was Chima. Nwadinobi tried to explain away this inconsistency by stating that he used "boyfriend" to mean a friend with whom he did not have sex, but this explanation was itself inconsistent with earlier descriptions of Chima as

---

[2] The majority wrongly concludes that this inconsistency was trivial. **Maj. at 5 n.3**. The name of the friend who purportedly housed Nwadinobi for three months was not "an utterly trivial inconsistency, such as a typographical error." *Shrestha v. Holder*, 590 F.3d 1034, 1043 (9th Cir. 2010). Nor did it fall into the category of "minor discrepancies in dates" of events experienced during persecution, which we have recognized as less probative of credibility because victims of abuse are more likely to forget those details, *Ren v. Holder*, 648 F.3d 1079, 1085–86 (9th Cir. 2011) (citation omitted). Rather, it is the sort of inconsistency about memorable details that raises a strong inference that the witness is lying.

both his sexual partner and his boyfriend. The majority attributes Nwadinobi's inconsistent testimony to translation issues and accepts his explanation, even though it does not actually resolve the inconsistency. **Maj. at 5–6**. There is no way to justify this conclusion. At a minimum, the record does not compel us to reverse the IJ's finding. *See Jiang*, 754 F.3d at 740.

We "must uphold the IJ's adverse credibility determination *so long as even one basis* is supported by substantial evidence." *Id.* at 738 (emphasis in original) (quoting *Rizk v. Holder*, 629 F.3d 1083, 1088–89 (9th Cir. 2011)). And even under the pre-Real ID Act standards, we recognized that "even minor inconsistencies . . . when considered collectively, [can] deprive [the petitioner's] claim of the requisite ring of truth." *Rizk*, 629 F.3d at 1088 (internal quotation marks and citation omitted). Here, the IJ identified inconsistencies in Nwadinobi's identity documents, the homosexual activity for which he claimed he was persecuted, and his narrative of escaping persecution, none of which was "an utterly trivial inconsistency, such as a typographical error." *Shrestha v. Holder*, 590 F.3d 1034, 1043 (9th Cir. 2010). Any one of these inconsistencies would have been enough to support the IJ's adverse credibility determination. *See Jiang*, 754 F.3d at 738. The majority's divide-and-conquer approach to reviewing the IJ's credibility findings undermines the "healthy measure of deference to agency credibility

5

determinations" we must accord under the Real ID Act.  *Huang v. Holder*, 744

F.3d 1149, 1153 (9th Cir. 2014) (quoting *Shrestha*, 590 F.3d at 1041).  Therefore, I

dissent.[3]

---

[3] Although the three inconsistencies identified by the BIA are sufficient to deny the petition, we are not constrained to ignore other bases for the IJ's adverse credibility determination, such as demeanor.  "Where, as here, the [BIA] incorporates the IJ's decision into its own . . . , this court will review the IJ's decision to the extent incorporated."  *Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014).  Because the BIA expressly incorporated the IJ's "specific, cogent reasons" for the adverse credibility finding, and merely described examples of its reasoning, without limiting its ruling to specific inconsistencies, we may review all the reasons provided by the IJ.